UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 21-80185-CIV-CANNON/Reinhart

**PRO-TECH CAULKING AND
WATERPROOFING, INC.**,

    Plaintiff,
v.

**TIG INSURANCE COMPANY**,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Defendant's Motion for Summary Judgment ("Defendant's Motion") [ECF No. 24], filed on November 17, 2021, and Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 26], filed on November 19, 2021.  The Court has reviewed the cross-motions for summary judgment, the parties' responses in opposition [ECF Nos. 29, 32], the parties' replies [ECF Nos. 34–35], the parties' statements of facts [ECF Nos. 23, 27, 30–31, 33], and the full record.  For the reasons set forth herein, Defendant's Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**.

### FACTUAL BACKGROUND[1]

This case is an insurance coverage dispute in which Plaintiff, Pro-Tech Caulking and Waterproofing, Inc. ("Plaintiff" or "Pro-Tech"), asserts that Defendant, TIG Insurance Company

---

[1] These facts are drawn from the parties' Joint Statement of Undisputed Material Facts [ECF No. 23], Defendant's Statement of Material Facts [ECF No. 27], Plaintiff's Response to Defendant's Statement of Material Facts [ECF No. 30], Plaintiff's Statement of Material Facts [ECF No. 31], and Defendant's Response to Plaintiff's Statement of Material Facts [ECF No. 33]. The parties have not indicated that they dispute any material fact.

1

CASE No. 21-80185-CIV-CANNON/Reinhart

("Defendant" or "TIG"), breached its defense and potential indemnity obligations in relation to an underlying construction defect action. The material facts are as follows:

1. Pro-Tech is a defendant in the consolidated case styled *BRE/Point Parcel, LLC v. Pavarini Construction Co. (SE), Inc., et al.*, 50-2014-CA-008231 (Fla. Cir. Ct. 2014), originally filed in 2014 and still pending in the Circuit Court in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("Underlying Action") [ECF No. 1-1 p. 130].

2. As alleged in the Underlying Action:

   a. The project consisted of the construction of a seven-story luxury oceanfront residential condominium building ("Project") [ECF No. 1-1 p. 133 ¶ 24].

   b. The plaintiff in the Underlying Action, BRE/Point Parcel, LLC ("BRE"), was the developer of the Project [ECF No. 1-1 p. 133 ¶ 24].

   c. On or about September 5, 2007, BRE retained Pavarini Construction Co. (SE), Inc. ("Pavarini") as the general contractor for the Project [ECF No. 1-1 pp. 134–35 ¶ 31].

   d. Pro-Tech was Pavarini's waterproofing subcontractor and was responsible for, among other things, the installation of the waterproofing systems on the Project [ECF No. 1-1 pp. 133, 138 ¶¶ 24, 43].

   e. Pro-Tech entered into a separate contract directly with BRE to install a "traffic coating" on the garage floors [ECF No. 1-1 pp. 189–90 ¶ 69].

3. The Underlying Action identifies Pro-Tech's purportedly defective work on the Project as follows:

    a. Failure to wrap the filter fabric as required to protect the weep holes in the drains and incorrect installation of the drainage mat, thereby preventing the proper functioning of the drainage system;

    b. Improperly installed sealants between the stucco and the underside of the horizontal tile at the balcony/terrace slab edge;

    c. Installation of waterproofing on an improperly sloped concrete slab, resulting in a submerged condition for which it was not designed;

    d. Failure to turn the waterproofing up the plunge pool walls;

    e. Failure to report that the plunge pools were installed prior to the installation of the primary waterproofing as required by the contract documents; and

    f. Failure to properly install traffic coating at the G-2 garage floor.

[ECF No. 1-1 pp. 146–47, 149, 190 ¶¶ 77, 270].

4. Pro-Tech completed its work for the Project before January 6, 2012 [ECF No. 22-4 pp. 4, 7].

5. TIG issued to Pro-Tech a commercial general liability policy bearing policy number ESL 1000620-1302, with effective dates of January 6, 2012 to January 6, 2013, and a renewal policy bearing policy number ESL 1000620-1201, with effective dates of January 6, 2013 to January 6, 2014 (together, the "Policies") [ECF No. 1-1 pp. 14–130].

6. The pertinent terms of the Policies are identical [ECF No. 1-1 pp. 14–130].

7. The Policies contain the following "Insuring Agreement," which reads:

    **1. Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured

    against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

    . . .

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2) The "bodily injury" or "property damage" occurs during the policy period.

[ECF No. 1-1 pp. 18, 75].

8. The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" [ECF No. 1-1 pp. 29, 86].

9. The term "accident" as used in the definition of "occurrence" is undefined in the Policies [ECF No. 1-1 pp. 14–129].

10. The Policies define "property damage" to mean:

    a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[ECF No. 1-1 pp. 30, 87].

11. The Policies provide "products-completed operations coverage" [ECF No. 1-1 pp. 25, 82]. In general, products-completed operations coverage provides coverage for damage caused by an insured's completed products or services.

12. The Policies contain the "Prior Occurrence and Pre-Existing Damage Exclusion" endorsement form ASIC ES 98 008 02 09, which reads:

**PRIOR OCCURRENCE AND PRE-EXISTING DAMAGE EXCLUSION**

\*\*\*

It is agreed that this insurance does not apply to:

1. Any "occurrence" of incident, claim or "suit":

    a. which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or

    b. which is, or is alleged to be, occurring or in the process of occurring as of the inception date of this policy or the retroactive date of this policy, if any, even if the "occurrence" continues during this policy period.

2. Any damages arising out of or relating to "bodily injury", "property damage" or "personal and advertising injury" which are known to any insured, or which first manifest, prior to the inception date of this policy or the retroactive date of this policy, if any, even if further damages continue during this policy period.

3. Any "suit", civil or legal proceeding or claim including a right to repair notice or similar statutory demand, which is in the process of settlement, adjustment, or initially filed or presented, prior to the inception date of this policy, or the retroactive date of this policy, if any.

We shall have no duty to defend any insured or Additional Insured and this insurance shall not apply to any "occurrence", damages, "suit" or claim or other proceeding to which this Endorsement applies.

All other terms, conditions and exclusions under this policy are applicable to this Endorsement and remain unchanged.

[ECF No. 1-1 pp. 39, 97].

13. On or about January 20, 2014, BRE received a Chapter 558 Notice of Claim from the Association (the "Transition Claim"), together with a "Turnover Report" by M2E Consulting Engineers [ECF No. 1-1 p. 142 ¶ 66].

14. On or about January 28, 2014, BRE issued a Notice of Claim to Pavarini pursuant to Chapter 558, Florida Statutes, enclosing the Association's Transition Claim and the M2E Turnover Report (the "Transition Notice") [ECF No. 1-1 p. 142 ¶ 67].

15. On or about February 7, 2014, Pavarini provided a copy of the Association's Transition Claim and the Transition Notice to the responsible subcontractor defendants, including Pro-Tech [ECF No. 1-1 p. 142 ¶ 68].

16. Each of the 558 Notices issued by BRE to Pavarani and the subcontractor defendants, including Pro-Tech, are based on claims made by the Association against BRE regarding defective work performed by Pavarini and its subcontractors, including Pro-Tech [ECF No. 1-1 p. 144 ¶ 76].

17. Beginning on or about November 11, 2016, BRE entered into a series of settlement agreement(s) with the Association pursuant to which BRE agreed to pay for the repair and correction of the defective work and compensate the Association for loss of use and enjoyment of condominium units and the common elements [ECF No. 1-1 pp. 159–60 ¶¶ 80, 83; ECF No. 22-2 p. 2].

18. As part of BRE's settlement with the Association, the Association released BRE and assigned to BRE all rights and claims the Association may have against the defendants in the Underlying Action, including Pro-Tech, under Section 718.203(2), Florida Statutes, or applicable law [ECF No. 1-1 p. 160 ¶¶ 82–83].

19. The Transition Claim, the Turnover Report, and the Transition Notice are not attached as exhibits to the operative complaint in the Underlying Action [ECF No. 1-1 p. 273].

20. BRE seeks recovery of its damages and has alleged breach of contract claims, breach of statutory warranty, and building code violations against Pro-Tech [ECF No. 1-1 pp. 185–87, 189–91, 222–23, 243 ¶¶ 241–53, 267–74, 451–58, 581–87].

21. BRE alleges that Pro-Tech's defective work: (i) damaged Condominium property, (ii) resulted in the loss of use of portions of the Project, and (iii) damaged the work of other

subcontractors, which could only be repaired by removing and replacing other, undamaged work [ECF No. 1-1 pp. 187, 190, 223, 243 ¶¶ 249–50, 273, 457, 582].

22. On August 4, 2020, Pro-Tech initiated this action by filing a complaint against TIG in state court, asserting that TIG breached its defense obligations owed to Pro-Tech under the Policies and requesting declaratory relief [ECF No. 1-1 pp. 6–13]. TIG removed the action to this Court on January 29, 2021 [ECF No. 1].

23. The complaint in the Underlying Action is silent as to exactly when the "property damage" resulting from Pro-Tech's alleged defective work occurred [ECF No. 1-1 pp. 130–267].

24. The "property damage" occurred within the "coverage territory" as defined in the Policies [ECF No. 1-1 p. 133 ¶¶ 23–24].

## PROCEDURAL HISTORY

Plaintiff filed its complaint in state court on August 4, 2020, asserting that Defendant breached its defense obligations owed to Plaintiff under the Policies and requesting declaratory relief [ECF No. 1-1 pp. 6–13]. Defendant removed the action to this Court on January 29, 2021 [ECF No. 1]. On November 17, 2021 and November 19, 2021, the parties filed their cross-motions for summary judgment [ECF Nos. 24, 26]. Both motions were followed by a response and a reply [ECF Nos. 29, 32, 34–35] and are ripe for adjudication.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving

party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the moving party has the burden to prove the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The non-moving party's presentation of a "mere existence of a scintilla of evidence" in support of its position is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 252.

"For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal quotation marks omitted). Speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e).

## DISCUSSION

This case centers around two nearly identical commercial general liability coverage contracts (an initial policy and a renewal policy). "Where the language in an insurance contract is

plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." *Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). Further, "in construing insurance contracts, 'courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.'" *Id.* (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007)).

Broadly speaking, Plaintiff is asserting that Defendant has a contractual duty to defend Plaintiff, and a potential contractual duty to indemnify Plaintiff, in connection with the Underlying Action based on the terms of the Policies. For purposes of the instant cross-motions for summary judgment, Plaintiff argues that its alleged defective work does not constitute an "occurrence" as defined in the Policies, and therefore, the fact that the alleged defective work took place prior to the inception of the policy period does not trigger the Prior Occurrence and Pre-Existing Damage Exclusion [ECF No. 29 pp. 3–4]. Further, Plaintiff argues that the Prior Occurrence and Pre-Existing Damage Exclusion contains ambiguous language and cannot support a grant of summary judgment for Defendant [ECF No. 29 pp. 4–7 (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003))]. In the alternative, Plaintiff argues that, if its alleged defective work *does* constitute an "occurrence" under the Prior Occurrence and Pre-Existing Damage Exclusion, then that exclusion must be considered ineffectual under Florida law because it renders "various coverage sections of the Policies illusory" [ECF No. 29 pp. 7–8 (citing *First Mercury Ins. Co. v. Sudderth*, 620 F. App'x 826, 830 (11th Cir. 2015))].[2]

---

[2] The case cited by Plaintiff—*First Mercury Ins. Co. v. Sudderth*, 620 F. App'x 826, 830 (11th Cir. 2015)—addresses Georgia's prohibition on illusory coverage in insurance policies. Florida law applies the same prohibition "when policy provisions, limitations, or exclusions completely contradict the insuring provisions." *Princeton Express v. DM Ventures USA LLC*, 209 F. Supp. 3d 1252, 1258 (S.D. Fla. 2016) (citing *Tire Kingdom, Inc. v. First S. Ins. Co.*, 573 So. 2d 885, 887 (Fla. Dist. Ct. App. 1990)).

Defendant responds that Plaintiff's arguments are contradicted by the plain terms of the Prior Occurrence and Pre-Existing Damage Exclusion [ECF No. 32 pp. 2–3; ECF No. 1- 1 pp. 39, 97]. As Defendant explains: Plaintiff's alleged faulty workmanship constitutes the "occurrence(s)" in this case [ECF No. 32 pp. 3–5]; all of Plaintiff's work was completed prior to January 6, 2012 [ECF No. 32 pp. 3, 7]; and the Policies clearly exclude coverage for any occurrence that takes place, fully or in part, before January 6, 2012 [ECF No. 32 p. 3]. Thus, Defendant responds, Plaintiff is not entitled to coverage because the relevant "occurrence(s)" occurred outside of the Policies' parameters. Nor does this reading of the Prior Occurrence and Pre-Existing Damage Exclusion render any coverage sections of the Policies illusory, Defendant adds, because the Exclusion merely limits, and does not completely contradict, coverage terms.

Upon full review, the Court concludes that Defendants are entitled to summary judgment. Pursuant to the plain language of the Policies, coverage does not apply in this case because the relevant "occurrence(s)" were, at minimum, in the process of occurring at the inception of the policy period, and thus Defendant does not have a duty to defend Plaintiff in the Underlying Action. Under the Insuring Agreement, there is liability coverage for "property damage" that: (1) is caused by an "occurrence"; and (2) "occurs during the policy period" [ECF No. 1-1 pp. 18, 75 ("This insurance applies to 'bodily injury' and 'property damage' only if: (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The 'bodily injury' or 'property damage' occurs during the policy period.")]. Coverage is further narrowed by, among other things, the Prior Occurrence and Pre-Existing Damage Exclusion, which excludes coverage for "occurrences" that occurred prior to, or that were in the process of occurring as of, the start of the policy period [ECF No. 1-1 pp. 39, 97

("It is agreed that this insurance does not apply to: [(1)] Any 'occurrence' of incident, claim or "suit": [(a)] which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or [(b)] which is, or is alleged to be, occurring or in the process of occurring as of the inception date of this policy or the retroactive date of this policy, if any, even if the 'occurrence' continues during this policy period.")]. Finally, for all of its uses in the Policies, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" [ECF No. 1-1 pp. 29, 86].

In this case, it is undisputed that Plaintiff's alleged defective work was fully performed prior to January 6, 2012, the start of the policy period [ECF No. 23 ¶ 13]. In addition, as the parties acknowledge, faulty workmanship can constitute an "occurrence" for purposes of commercial general liability policies under Florida law [ECF No. 26 p. 7; ECF No. 32 p. 3; *see also U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 888 (Fla. 2007); *Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n, Inc.*, 721 F. App'x 847, 854 (11th Cir. 2017)]. There are no allegations that Plaintiff's expected or intended damage to result from its work [ECF No. 24 p. 8; ECF No. 26 p. 8]. Thus, under Florida law, the parties' contractual language, and the parties' shared understanding of the facts, Plaintiff's alleged defective work constituted an "occurrence"[3] as defined in the Policies. However, because that "occurrence" was, at minimum, "in the process of occurring" as of the start of the policy period, the consequent damage is plainly excluded from

---

[3] Plaintiff's alleged defective work may very well constitute multiple "occurrences." However, whether the work is considered a single "occurrence" or multiple "occurrences" has no impact on this Order's analysis.

coverage under the Prior Occurrence and Pre-Existing Damage Exclusion [ECF No. 1-1 pp. 39, 97].[4]

Plaintiff responds that, even assuming its alleged faulty workmanship constitutes an "occurrence," the Prior Occurrence and Pre-Existing Damage Exclusion is ambiguous in scope and cannot support a grant of summary judgment for Defendant. More specifically, according to Plaintiff, because the first subsection of the Prior Occurrence and Pre-Existing Damage Exclusion discusses "occurrences" without an express reference to "damage" [ECF No. 1-1 pp. 39, 97], the Exclusion "does nothing to modify or limit coverage that is available for 'property damage' . . . ." [ECF No. 29 p. 5]. In other words, Plaintiff raises the odd suggestion that the Prior Occurrence and Pre-Existing Damage Exclusion could be read to leave coverage in place for the damage associated with the prior "occurrences" that it expressly excludes—i.e., that the exclusion could eliminate coverage for an "occurrence" outside of the policy period while simultaneously providing coverage for damage caused by that uncovered "occurrence." This reading of the Policies fails under the plain terms of the Insuring Agreement and the Prior Occurrence and Pre-Existing Damage Exclusion. The Insuring Agreement makes clear that the Policies provide coverage only for select damage caused by an "occurrence," and that the damage must occur during the policy period in order to be covered [ECF No. 1-1 pp. 18, 75]. It is true that the Prior Occurrence and Pre-Existing Damage Exclusion does not repeat the word "damage" in excluding coverage for "occurrences" that occurred in part or in full prior to the policy period, but the exclusion expressly incorporates all other terms and conditions under the Policies [ECF No. 1-1

---

[4] Because Defendant does not have a duty to defend Plaintiff in the Underlying Action, Defendant also does not have a duty to indemnify Plaintiff in the Underlying Action. *See WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 907 (Fla. Dist. Ct. App. 2009) (citing *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 422 (Fla. Dist. Ct. App. 1995)).

pp. 39, 97], including the affirmative grant of coverage for "property damage" caused by an "occurrence" [ECF No. 1-1 pp. 18, 75]. In any event, Plaintiff's suggestion of the possibility of a covered "damage" independent from an "occurrence" flatly contradicts the language of the Policies, which plainly covers damages for occurrences as specified in the Policies.

Plaintiff next argues that, even accepting that Plaintiff's alleged defective workmanship is an "occurrence" under the Policies, and further accepting that the Prior Occurrence and Pre-Existing Damage Exclusion is not ambiguous as argued above, the exclusion still fails as a matter of law because it renders coverage illusory and therefore cannot be given effect [ECF No. 29 pp. 7–8 (citing *Sudderth*, 620 F. App'x at 830)]. As its sole example, Plaintiff claims that interpreting the Prior Occurrence and Pre-Existing Damage Exclusion to apply to damages caused by excluded "occurrences" would "completely eviscerate the products-completed operations coverage" in the Policies [ECF No. 29 p. 7; *see, e.g.*, ECF No. 1-1 pp. 363, 370, 372 (referencing "products-completed operations coverage"); ECF No. 23 ¶ 1]. Plaintiff is incorrect. Rather than "completely contradict" any coverage provisions, *Princeton Express*, 209 F. Supp. 3d at 1258, the Prior Occurrence and Pre-Existing Damage Exclusion merely narrows coverage to instances where the relevant "occurrence" fully occurs within the policy period. For instance, with respect to products-completed operations coverage, coverage still would apply to qualifying damages that were caused by an "occurrence" (e.g. faulty workmanship) that fully occurred within the policy period [*see* ECF No. 34 pp. 7–8]. Thus, the Prior Occurrence and Pre-Existing Damage Exclusion limits products-completed operations coverage to some degree but does not render it illusory. Plaintiff does not identify any coverage section that is completely contradicted by the Prior Occurrence and Pre-Existing Damage Exclusion.

In sum, the plain language of the Policies is clear: there is no liability coverage for damage associated with "occurrences" that occurred, fully or in part, prior to start of the policy period. In this case, the "occurrence" that allegedly caused damage was Plaintiff's workmanship, and Plaintiff completed the relevant work before the Policies took effect. Accordingly, Defendant does not have a duty under the parties' commercial general liability coverage contracts to defend Plaintiff in the Underlying Action.[5] Summary judgment in favor of Defendant is warranted.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [ECF No. 24] is **GRANTED**. Summary judgment is hereby **ENTERED** in favor of the Defendant.

2. Plaintiff's Motion for Summary Judgment [ECF No. 26] is **DENIED**.

3. The Court will enter a separate final judgment pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 18th day of January 2022.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record

---

[5] Because Defendant does not have a duty to defend Plaintiff in the Underlying Action, Defendant also does not have a duty to indemnify Plaintiff in the Underlying Action. *See WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 907 (Fla. Dist. Ct. App. 2009) (citing *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 422 (Fla. Dist. Ct. App. 1995)).